UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:22-CV-00246-DJH

**TYKESHA STOKES**                                                     **PETITIONER**

**VS.**

**JERRY COLLINS, et al.**                                        **RESPONDENTS**

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND RECOMMENDATION

This 28 U.S.C. § 2254 Petition arises from a Kentucky trial judge holding Tykesha Stokes ("Stokes") in contempt during sentencing proceedings for Stokes' son. The state trial judge ordered Stokes to serve thirty days in jail. Stokes appealed her conviction with no success. On May 2, 2022, the Jefferson County Circuit Court ordered Stokes to report to jail on May 9, 2022 to begin serving her contempt sentence.

The day before Stokes was due to report to jail, she filed an Emergency Petition for Writ of Habeas Corpus with this Court. (DN 1). Due to the emergent nature of the Petition, the Court scheduled a hearing for May 6, 2022. (DN 7). Following the hearing, the Court held the Jefferson Circuit Court's Order in abeyance until this Court substantively rules on her federal habeas petition. Stokes, at the Court's request, filed an Amended Habeas Petition and attached portions of the state court proceedings. (DN 8). Respondents Jerry Collins (Warden of Louisville Metro Department of Corrections) and Daniel Cameron (Kentucky Attorney General) filed responses. (DN 11; DN 13). Stokes filed a reply. (DN 17). After reviewing the parties' submissions, the Court ordered Stokes to file additional records from the state court proceedings in the record. (DN 18). Stokes complied with this Order. (DN 19).

The District Judge referred this matter to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (DN 4). Based on the following analysis, the Court recommends Stokes' petition be **denied**.

## I. Findings of Fact

### A. Trial Court Video Recordings

On December 17, 2019, Tykesha Stokes sat in the gallery of a Jefferson County courtroom while her nineteen-year-old son, Dominique Parker ("Parker"), was sentenced in an armed robbery case. Parker's counsel argued he should receive probation. (DN 8-1, at 9:13:19-9:13:23). After considering the severity of Parker's participation in the armed robbery, his two prior handgun charges as a juvenile, and his insufficient home support to stop committing crimes, the presiding judge sentenced Parker to five years in prison. (*Id.* at 9:15:28-9:16:42).

Immediately after hearing her son's sentence, Stokes stood up and began walking toward the courtroom's exit. (*Id.* at 9:16:44-9:16:45). Stokes stated: "I don't know how you sleep at night" as she continued walking toward the door. (*Id.* at 9:16:45-9:16:47). The trial judge then announced: "You can take her into custody as well, Sheriff." (*Id.* at 9:16:48- 9:16:52). Though the courtroom exit is not completely visible in the video recording, it appears Stokes had reached the threshold of the doorway when the trial judge gave the Sheriff this directive. (*Id.* at 9:16:51-52). The nine other individuals visible in the courtroom gallery remained quiet and seated during this exchange.

After the Sheriff guided Parker out of the courtroom, the video recording stops for approximately one minute. When the video recording resumes, Stokes is back in the courtroom. The trial judge states: "You need to control yourself. You're causing a lot of problems for your kid. Now you've caused them for yourself." (*Id.* at 9:18:32-9:18:29). Stokes then asks: "I've got to do 30 days?" (*Id.* at 9:18:29-9:18:31). And the trial judge responded: "Keep it up and you'll do

2

60." (*Id.* at 9:18:32-33). The Sheriff then took Stokes into custody. (*Id.* at 9:18:45 – 9:18:50). The video continues for approximately thirty more seconds before cutting off, with nothing notable occurring in the courtroom. (*Id.* at 9:19:17).

Almost fifteen minutes later, the video recording resumes. Parker's attorney starts speaking but is promptly interrupted by the trial judge stating: "Sheriff, we've got additional problems going on over there." (*Id.* 9:34:31). The trial judge asks Parker's counsel if the individuals that had just entered the gallery were on "his case as well?" He responded: "no I don't think so." (*Id.* at 9:34:30-44). One of the individuals stated he was present for a different case. The trial judge admonished this person to "have a seat, sir, and try to compose yourself in some fashion." (*Id.* at 9:34:51-56).

After the trial judge instructed Parker's counsel to continue, Parker's counsel conveyed that Stokes had requested his representation as well. (*Id.* at 9:35:06). Counsel apologized on Stokes' behalf, indicating her behavior was a reaction to her son being sent to prison. (*Id.* at 9:35:15-33). Counsel indicated Stokes was employed at the post office and asked for her thirty-day contempt sentence to be transferred to work release. (*Id.* at 9:35:37-52). The trial judge stated she did not believe Stokes was sorry, that Stokes "fled from here when I told the Sheriff to take her in custody," and she would not set aside the contempt sentence or provide her with work release. (*Id.* at 9:36:38-9:36:50). Counsel argued that "what the court says logically is right, but I don't think that was what was going through her mind" and that the thirty-day sentence was excessive. (*Id.* at 9:37:03-9:37:14). The trial judge responded:

> She was extremely disrespectful to the court, yelling at the court, and disparaging the court and the prosecution, and cussing and carrying on in front of her son who's in custody, causing problems for the sheriff, because we only have one, he's got to deal with her son who's incarcerated, then it becomes an issue of safety for the court, and then she's carrying on like that and causing such a ruckus in a crowded courtroom. So that's the reality . . . her sentence stands.

(*Id.* at 9:37:14 – 9:37:48). The video then concludes.

3

B. The Trial Court's Contempt Order

Following these proceedings, the trial judge issued a written Order of Contempt. (DN 8-2, at PageID # 71). The Order characterized Stokes' behavior in the courtroom during her son's sentencing as follows:

> Stokes [] stood up in the gallery and loudly objected to the Court's decision to send [her son] to prison. She unleashed a tirade of insults and profanity regarding the Court, the prosecution, and the criminal justice system. She voluntarily delivered expletive laded [sic], abusive language to the Court in the presence of a courtroom crowded with a heavy docket of other defendants charged with gun charges, murder, and various felonies, as well as Court personnel, victims, officers, spectators, and other participants in the criminal justice system. She showed absolutely no regard for Courtroom decorum, and she exhibited zero respect for the tribunal or the dignity of the proceeding. She also displayed not an iota of remorse when confronted by the Court and held in contempt.
>
> To the contrary, she fled from the Courtroom when the Court asked the deputy Sheriff to take her into custody. As he was the only deputy in the Courtroom, he could not attend to her, as he had to secure her incarcerated, felonious son and keep the Court secure. When another deputy arrived, the Courtroom deputy was able to secure [Stokes], as she was standing just outside the Courtroom in the hall in front of the much beleaguered and delayed Courthouse elevator system.
>
> When brought before the Court, [Stokes] loudly complained about her 30-day sentence for contempt. The Court instructed her to compose herself and behave respectfully or face more time in jail.

(*Id.* at PageID # 71-72).

Later in the Order, the trial judge stated that Stokes' utterance of profanities and disrespect "incited riotous behavior from the spectators in the Courtroom and created a security issue." (*Id.* at PageID # 72). The trial judge concluded that by Stokes' "every word and deed in this Court hearing, [Stokes] attempted to turn a solemn Court proceeding into an episode of the Jerry Springer show, or worse." (*Id.* at PageID # 73). The trial judge indicated her order of contempt and sentence of thirty days in jail would stand. (*Id.*).

C. Stokes' State Court Appeals of the Contempt Order

Stokes filed a Notice of Appeal (DN 19-3, at PageID # 463) and an Emergency Motion for Intermediate Relief, requesting her release pending resolution of her appeal (*id.* at PageID # 457-462). The Kentucky Court of Appeals granted Stokes' Emergency Motion for Intermediate Relief. (*Id.* at PageID # 444-45).

Stokes' appellate brief included three arguments for reversal of her conviction: (1) the trial court failed to hold a contempt hearing; (2) the contempt finding was based on clearly erroneous factual findings; and (3) the contempt finding was arbitrary, unfair, and unreasonable. (*Id.* at PageID # 408-23). The Kentucky Court of Appeals ultimately affirmed the trial court's contempt sentence. The appellate court presented the following version of facts:

> After [her son's] sentence was announced, Stokes loudly exclaimed, "I don't know how you all sleep at night!" The trial court directed the sheriff to take Stokes into custody as she was leaving the courtroom. The sheriff was the only bailiff present and, charged with keeping [Stokes' son] in custody as well as the order of the courtroom, could not pursue Stokes after she exited the courtroom. A deputy apprehended Stokes outside the courtroom in the corridor awaiting the elevator. Stokes was escorted before the trial court and informed she was to serve thirty days in jail. In response, Stokes was argumentative and disrespectful, and the court threatened to lengthen her sentence if she continued such behavior.

(DN 19-2, at PageID # 356-57).

In denying Stokes' challenges to the trial court's factual findings regarding her conduct inside and outside the courtroom, the Kentucky Court of Appeals found "[t]he mere fact Stokes evaded custody by continuing to walk away and exiting the courtroom after hearing the trial court's order is sufficient evidence to hold her in direct contempt." (*Id.* at PageID # 360). Because the trial court had already determined Stokes' sentence before she exited the courtroom and did not increase such sentence based on "whatever occurred outside its presence," the Kentucky Court of Appeals found any such outside activity "clearly made no impact on the court's prior determination." (*Id.*).

As for Stokes' claim the trial court improperly relied on statements allegedly made that are not part of the video record, the Court of Appeals found it was Stokes' duty to ensure the record was complete on appeal. The Court of Appeals, therefore, assumed any omitted portion of the video record supported the trial court's contempt order. (*Id.* at PageID # 360-61). Finally, the Court of Appeals concluded Stokes had offered little, if any, support for her claim that the trial court's punishment was arbitrary, unfair, and unreasonable and decided it would not disturb the trial court's great discretion in determining an appropriate contempt sentence. (*Id.*, at PageID # 362).

Stokes filed a Petition for Rehearing (*Id.* at PageID # 327-37), which the Court of Appeals summarily denied (*id.* at PageID # 312). Next, Stokes sought discretionary review from the Supreme Court of Kentucky. (DN 19-5, at PageID # 538-46). Stokes' request was again summarily denied on March 16, 2022. (DN 19-4, at PageID # 480). On May 2, 2022, the trial judge issued a "Commitment Order," commanding Stokes report to jail on May 9, 2022 at 9:00 AM to serve the remaining twenty-seven days of her contempt sentence. (DN 8-2, at PageID # 27, 34).

### D. Stokes' Federal Habeas Action

Stokes filed this federal habeas action on May 4, 2022. Due to the emergent nature of Stokes' 28 U.S.C. § 2254 Petition, the Court promptly held a hearing. (DN 7). The Court concluded further briefing and additional evidence on the issues raised in Stokes' Petition were necessary. (*Id.*). Based on that determination, the Court held the state trial judge's May 2, 2022 Commitment Order in abeyance until the § 2254 habeas petition was resolved. (*Id.*).

Stokes' Amended Habeas Petition asserts the state trial judge's order was based on an unreasonable determination of the facts. (DN 8, at PageID # 19). The facts alleged in the contempt order never happened, according to Stokes. (*Id.*). The state court's thirty-day contempt sentence, Stokes contends, violates her due process rights under the Fourteenth Amendment. (*Id.* at PageID

# 20). Stokes explains the harm of a thirty-day contempt sentence, two-and-a-half years after the alleged contempt, would be irreparable because she now lives in Georgia and attends school there. (*Id.* at PageID # 21).

## II. Standard of Review

The federal habeas statute, as amended in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), provides relief from a state conviction if the petition satisfies one of the following conditions:

> The [state court's] adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

As to § 2254(d)(2), a federal habeas court may not substitute its evaluation of the state evidentiary record for that of the state trial court or state appellate court unless the state determination is unreasonable. *Rice v. Collins*, 546 U.S. 333, 341-42 (2006). Though the term "unreasonable" is hard to define, the Supreme Court has consistently commented that "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010) (citing *Williams v. Taylor*, 529 U.S. 362, 411 (2000)); *see also Burt v. Titlow*, 571 U.S. 12, 15 (2013) (internal quotation marks and citation omitted). Stated differently, while reasonable minds reviewing the record might disagree about a factual finding in question, on federal habeas review, such disagreement "does not suffice to supersede the trial court's . . . determination." *Brumfield v. Cain*, 576 U.S. 305, 314 (2015). The federal habeas court's deference to state court factual

determinations, however, "does not imply abandonment or abdication of judicial review" and "does not by definition preclude relief." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

### III. Conclusions of Law

#### A. Jurisdiction

The Parties submit the Court has jurisdiction to hear Stokes' § 2254 Habeas Petition pursuant to *Hensley v. Municipal Court,* 411 U.S. 345 (1973) despite Stokes not presently being incarcerated. In *Hensley*, the Supreme Court extended the "in-custody" requirement to individuals who are released on bond at the time their habeas petitions are filed when three requirements were met. *Lawrence v. 48th Dist. Ct.*, 560 F.3d 475, 480 (6th Cir. 2009) (citing *McVeigh v. Smith*, 872 F.2d 725, 727 (6th Cir. 1989) (quoting *Hensley*, 411 U.S. at 351-53)). The petitioner must be "subject to restraints 'not shared by the public generally,'" must be "at large only by the grace of a stay" entered by the state court, and must have "exhausted all available state court opportunities to have [the] conviction set aside." *Hensley*, 411 U.S. at 351-53) (internal citations omitted). Finding Stokes' circumstances are similar to those in *Hensley*, jurisdiction for her § 2254 petition exists.

#### B. Procedural Default

The Attorney General ("AG") presents two reasons why Stokes' claim is procedurally barred. First, the AG argues Stokes never presented her current federal claim when challenging her conviction in state court. (DN 13, at PageID # 239-41). Second, the AG argues Stokes failed to present a narrative statement of the missing video record as required by Kentucky's procedural rules. (*Id.* at PageID # 241-46).

Stokes' Reply sidesteps the AG's arguments as to procedural default. Stokes states the AG's complaints regarding her presentation of her claim in state court ignores the critical issue

8

here – whether she is being held in contempt for conduct that never happened. (DN 17, at PageID # 261). Nonetheless, Stokes emphasizes that her appellate brief attacked the trial court's finding of contempt as arbitrary and explains that arbitrariness is a due process and equal protection claim under section 2 of the Kentucky Constitution. (*Id.* at PageID # 261-62). Stokes doesn't directly respond to the AG's procedural default argument based on her failure to follow a Kentucky procedural rule but challenges the AG's attempts "to dodge the question of whether the contempt order, based on what occurred in the courtroom on the recording, is valid because no one submitted a narrative of what happened after she left the courtroom[.]" (*Id.* at PageID # 261).

      i. Did Stokes Fairly Present her 14th Amendment Due Process Claim in State Court?

A federal habeas petitioner may procedurally default a claim by failing to "fairly present" it to the state courts. Fair presentation requires the petitioner to have "asserted both the factual and legal basis for [their] claim to the state courts." *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000) (citing *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987)). The Sixth Circuit considers the following factors to determine if a claim was fairly presented to the state court:

    (1) reliance upon federal cases employing constitutional analysis;

    (2) reliance upon state cases employing federal constitutional analysis;

    (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or

    (4) alleging facts well within the mainstream of constitutional law.

*Id.* at 681. "General allegations of the denial of rights to a 'fair trial' and 'due process' do not 'fairly present' claims that specific constitutional rights were violated." *Id.* (quoting *Petrucelli v. Coombe*, 735 F.2d 684, 688-89 (2d Cir. 1984)).

The AG argues Stokes' present due-process claim was never raised in state court. This is correct. Although Stokes' appellate brief claimed that the "trial court's finding of contempt was

9

an abuse of discretion because it is based on clearly erroneous factual findings," Stokes provided no constitutional component in this claim. Her claim did not reference either due process or the Fourteenth Amendment. And the only case cited by Stokes supporting this claim, *Cary v. Pulaski County Fiscal Court*, 420 S.W.3d 500 (Ky. Ct. App. 2013), does not employ federal constitutional analysis.[1] In fact, the only time Stokes' appellate brief mentioned due process was in reference to her perceived entitlement to a contempt hearing, which is distinct from her current habeas claim.

Additionally, neither Stokes' Petition for Rehearing to the Kentucky Court of Appeals nor Motion for Discretionary Review to the Kentucky Supreme Court included a federal constitutional claim. Though her latter Motion again raised whether her conviction and sentence were an abuse of discretion, the claim fails to set forth any constitutional component, fails to use any constitutional buzzwords, and fails to cite any state or federal caselaw employing a federal constitutional analysis. *See McMeans*, 228 F.3d at 681; *see also Adelson v. DiPaola*, 131 F.3d 259, 263 (1st Cir. 1997) ("we regularly have held, and today reaffirm, that the mere incantation of constitutional buzzwords, unaccompanied by any federal constitutional analysis, does not suffice to carry the burden of demonstrating fair presentment of a federal claim.") (citations omitted).

Attempting to convince the Court she fairly presented her constitutional claim to the Kentucky Court of Appeals, Stokes explains her argument as to the arbitrariness of her contempt sentence equates to a due process and equal protection claim under section 2 of the Kentucky Constitution. But the Kentucky Constitution is not relevant to this analysis. Stokes must prove she fairly presented a claim of federal constitutional dimension to the state courts, which she has failed to do here.

---

[1] *Cary* is a civil case concerning whether certain roads were categorized as private passways or county roads and whether certain landowners should be held in contempt for erecting gates across portions of these roads. 420 S.W.3d 500.

10

Finding Stokes did not fairly present her current claim to the state courts does not end this Court's analysis. The question next becomes whether Stokes has an available state court remedy to exhaust her claims. She does not. Stokes should have raised her federal constitutional claim when directly appealing the state trial court's contempt order. Because Kentucky rules forbid Stokes from returning to state courts to present her claim, her claim is exhausted.[2] *See Gray v. Netherland*, 518 U.S. 152, 161 (1996).

Stokes is not entitled to substantive habeas corpus review on her procedurally defaulted claim unless she can show good cause for her failure to fairly present the claim and actual prejudice resulting from the error, *Wainwright v. Sykes*, 433 U.S. 72 (1977), or show that "failure to consider the claims will result in a fundamental miscarriage of justice," *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Stokes makes no effort to demonstrate cause and prejudice for her default. Instead, she states a failure to consider her habeas claim, due to a lack of magic words, would be a fundamental miscarriage of justice. (DN 17, at PageID # 262).

The fundamental-miscarriage-of-justice exception requires a showing of actual innocence. *See Dretke v. Haley*, 541 U.S. 386, 393 (2004); *Murray v. Carrier*, 477 U.S. 478, 496 (1986) (the fundamental-miscarriage-of-justice exception applies when "a constitutional violation has probably resulted in the conviction of one who is actually innocent."). In *Schlup v. Delo*, the Supreme Court specified that for a claim of actual innocence to be credible, the petitioner must

---

[2] While Stokes has exhausted and procedurally defaulted her current claim, the undersigned notes that post-conviction relief may still be available to Stokes pursuant to Kentucky Rule of Criminal Procedure 11.42. This Rule provides a procedure for a motion to vacate, set aside, or correct sentence for "a prisoner in custody under sentence or a defendant on probation, parole or conditional discharge" that provides a vehicle to attack an erroneous judgment for reasons which are not accessible by direct appeal. RCr 11.42; *see also Gross v. Commonwealth*, 648 S.W.2d 853, 856 (Ky. 1983). Petitions filed under Rule 11.42 must show there "has been a violation of a constitutional right, a lack of jurisdiction, or such a violation of a statute as to make the judgment void and therefore subject to collateral attack." *Hodge v. Commonwealth*, 68 S.W.3d 338, 342 (Ky. 2001) (quoting *Lay v. Commonwealth*, 506 S.W.2d 507, 508 (Ky. 1974)). Such motions must be brought within three years of the defendant's judgment becoming final. RCr 11.42(10). This Court merely offers Rule 11.42 as a suggestion to Stokes and notes that any decision on the appropriateness of such relief lies with the state courts.

"support [their] allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." 513 U.S. 298, 324 (1995). Proving legal insufficiency is not enough; "actual innocence means factual innocence." *Bousley v. United States*, 523 U.S. 614, 623 (1998). Under this difficult standard, claims of actual innocence are seldom successful. *Id.*

Stokes makes several convincing arguments regarding whether the version of events outlined in the trial court's contempt order are an accurate description of the events that occurred on December 17, 2019.[3] However, none of the evidence Stokes submits with her habeas petition can be considered new reliable evidence proving her actual innocence. Stokes' arguments of innocence are based only on the video recordings from the day in question, which Stokes had access to and relied upon in filing her direct appeal. The fundamental-miscarriage-of-justice exception, accordingly, cannot apply to save Stokes' petition from default. Due to Stokes' procedural default, the Court cannot proceed to merits evaluation of her claim.

Nor should a Certificate of Appealability ("COA") issue as to Stokes' claim. When the Court recommends denial based on procedural grounds, a COA shall only issue if the petitioner shows "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Because Stokes' claim is procedurally defaulted and she has not established any exception for default, reasonable jurists would not debate whether the court's procedural ruling was correct. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The Court does not recommend a COA issue at to this claim.

---

[3] The Court agrees with Stokes that no supporting video evidence exists for several of the trial judge's characterizations of Stokes' conduct, including Stokes' alleged "tirade of insults and profanity[,]" "expletive laded [sic], abusive language to the Court[,]" "incit[ing of] riotous behavior from the spectators in the Courtroom[,]" and "attempt[ing to] turn a solemn Court proceeding into an episode of the Jerry Springer show, or worse."

### ii. Did Stokes Procedurally Default her Claim by Failing to Comply with Kentucky Rule of Civil Procedure 75.13?

Though it is largely unnecessary to address the AG's additional procedural-default claim because the Court already recommends Stokes' habeas petition be dismissed on procedural grounds, the Court will do so out of an abundance of caution.[4]

The AG's second procedural argument hinges on the Parties' dispute as to whether Stokes designated and filed a complete record on appellate review. In affirming the trial court's contempt conviction and sentence, the Kentucky Court of Appeals found Stokes had failed to comply with Kentucky's procedural rules governing the record on appeal. (DN 19-2, at PageID # 360-61). The appellate court explained it must assume "any omitted portion of the video record supports the trial court's contempt order" because Stokes had not designated and filed a complete record. (*Id.* at PageID # 361).

Stokes argued in her petition for rehearing that the Kentucky Court of Appeals' presumption regarding omitted portions of the appellate record was incorrect because the record Stokes submitted on appeal was, in fact, complete. (*Id.* at PageID # 332). Stokes thoroughly explained the efforts she undertook in conjunction with the Jefferson Circuit Court to obtain the CD/DVD recordings from December 17, 2019 and how the Clerk confirmed that all three recorded hearings from that date were produced to counsel. (*Id.* at PageID # 331). According to Stokes, there is no missing video record; therefore, she could not have prepared a narrative statement for a video that does not exist or a hearing that did not occur. (*Id.* at PageID # 334-35). The Kentucky Court of Appeals summarily denied Stokes' petition for rehearing without addressing Stokes' claims regarding the completeness of the appellate record.

---

[4] Even if the Court were to find Stokes' claim was not defaulted for failure to follow a Kentucky Procedural Rule, the Court's above finding of procedural default supersedes any merits evaluation of Stokes' claim.

13

The AG now argues Stokes procedurally defaulted her claim by failing to comply with Kentucky Rule of Civil Procedure 75.13(1) ("CR 75.13"), which requires appellants to ensure the record is complete on appeal. (DN 13, at PageID # 241-42). The AG specifically faults Stokes' failure to provide a narrative statement describing what occurred during the one-minute gap between the first and second video recordings. (*Id.* at PageID # 242). Stokes' procedural error, the AG argues, provides an adequate and independent basis for affirming the trial court's contempt order. (DN 13, at PageID # 243). As mentioned above, Stokes' only reference to the AG's second procedural-default argument indicated her belief that the AG was dodging the contempt order's validity by emphasizing no one submitted a narrative of the events occurring outside of the courtroom. (*Id.* at PageID # 261).

Procedural default may also apply when application of a state procedural rule prevented the state courts from reaching the merits of a petitioner's claim. *See Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006) (citing *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)); *see also Greer v. Mitchell*, 264 F.3d 663, 672-73 (6th Cir. 2001). The Sixth Circuit provides three inquiries district courts must undertake in determining whether a habeas claim has been defaulted by a petitioner's failure to observe a state procedural rule:

> (1) the petitioner failed to comply with a state procedural rule that is applicable to the petitioner's claim;
>
> (2) the state courts actually enforced the procedural rule in the petitioner's case; and
>
> (3) the procedural forfeiture is an "adequate and independent" state ground foreclosing review of a federal constitutional claim.

*Willis v. Smith*, 351 F.3d 741, 744 (6th Cir. 2003) (citing *Maupin*, 785 F.2d at 138). Like the first type of procedural default, a petitioner may excuse a state-procedural-rule default by

14

demonstrating "cause" for her neglect of the procedural rule and actual prejudice resulting from the alleged constitutional error. *Maupin*, 785 F.2d at 138.

All three criteria for default are met here. Under CR 75.13, when an appellant is faced with an incomplete record, they "may prepare a narrative statement thereof from the best available means, including his/her recollection, for use instead of a transcript or for use as a supplement to or in lieu of an insufficient electronic recording."[5] Ky. R. Civ. P. 75.13(1). Applying this Rule, Kentucky courts have found when a deficiency in the record exists, the litigant "must follow the procedure of supplying a narrative statement . . . in order for a reviewing court to determine whether he has been prejudiced." *Harper v. Commonwealth*, 371 S.W.3d 763, 768 (Ky. Ct. App. 2011) (quoting *Nat. Dairy Products Corp. v. Rittle*, 487 S.W.2d 894, 896 (Ky. 1972)). When a litigant fails to avail themself of this remedy, they then "arrive[] in court without a record of what [they] claim[] to have been the evidence." And the reviewing court must then assume the omitted portions of the record support the decision of the trial court. *Hammond v. Commonwealth*, 569 S.W.3d 404, 408-09 (Ky. 2019) (quoting *Commonwealth v. Thompson*, 697 S.W.2d 143, 145 (Ky. 1985)).

Stokes submitted three video recordings from December 17, 2019 to the Kentucky Court of Appeals. Relevant here is the missing minute of video recording between the first and second

---

[5] CR 75.13 applied at the time Stokes could have prepared a narrative summary for use in her state court appeal. That Rule was since superseded by Kentucky Rule of Appellate Procedure ("RAP") 25 on January 1, 2023. RAP 25 now sets forth the procedure for inclusion of a narrative statement in the record on appeal as a supplement to or in lieu of an unavailable or insufficient official record of trial court proceedings. The Kentucky Supreme Court's Order In re: applicability of the New Rules of Appellate Procedure (Dec. 29, 2022) provides that all matters pending on or filed after January 1, 2023 are governed under the new Rules of Appellate Procedure.

The fact that CR 75.13 became ineffective after January 1, 2023 has no bearing on the Court's assessment of procedural default in this federal habeas proceeding because this Rule was in effect at the time Stokes appealed the trial court's contempt order. Moreover, Stokes did not bring this rule change to the Court's attention and makes no argument that such rule change alters evaluation of her claim. Regardless, after independently reviewing RAP 25, the Court finds this procedural rule to be substantially similar to CR 75.13. *See, e.g., Bunch v. Commonwealth*, 2021-SC-0584-MR, 2023 WL 2622037, at *7 (Ky. Mar. 23, 2023) (noting that both the civil rules in effect when the appellant filed his appeal and the new rules of appellate procedure "afford litigants the ability to prepare a narrative summary to cure a deficiency or omission from the record.").

15

hearings. At the end of the first video recording, Stokes is seen exiting the courtroom. When the video recording resumes approximately one minute later, Stokes has returned to the courtroom and the trial judge is admonishing her behavior. CR 75.13 applied to this missing or non-existent one-minute gap in the video recordings. And the Kentucky Court of Appeals clearly enforced this procedural rule in Stokes' case. (*See* DN 19-2, at PageID # 360-61 (the court assumed "any omitted portion of the video record supports the trial court's contempt order" because Stokes had not designated and filed a complete record)).

The third criterion is whether the state court's reference to state law constitutes an adequate and independent state ground for its judgment. For the adequate-and-independent state-ground doctrine to apply, the state procedural rule at issue must be "firmly established and regularly followed." *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991). State procedural rules that are not strictly followed will not bar the federal courts from reviewing federal constitutional claims. *Barr v. City of Columbia*, 378 U.S. 146, 149-50 (1964) (citations omitted). Review of Kentucky caselaw assessing CR 75.13 reveals courts consistently apply this Rule to foreclose appellants' arguments relating to missing or nonexistent evidence when they fail to submit the required narrative statement. *See, e.g., Hammond v. Commonwealth*, 569 S.W.3d 404, 408-09 (Ky. 2019) (finding where record did not include copy of plea agreement or court's acceptance of agreement, and no narrative supplementation was provided, court was left to presume the omitted records supported the trial court's decision) (quoting *Commonwealth v. Thompson*, 697 S.W.2d 143, 145 (Ky. 1985)); *Trent v. Commonwealth*, 2017-SC-000186-MR, 2018 WL 4628142, at *3 (Ky. Sept. 27, 2018) (appellate court was left to assume missing record of *Faretta* hearing supported the trial court's findings where appellant failed to provide a narrative statement pursuant to CR 75.13). Kentucky's

former procedural rule as to the supplementation of incomplete records, therefore, constituted an independent and adequate state ground for denying relief.

Stokes again fails to put forth any cause or prejudice for this default, maintaining only that this court's failure to consider the merits of her claim would result in a fundamental miscarriage of justice. But, once more, Stokes has not provided any new reliable evidence, as required by *Schlup* and *Bousley*, to demonstrate her factual innocence.

Reasonable jurists would not debate whether the Court's finding of procedural default is correct because all elements of *Maupin* are present and Stokes provided no support for excusing her default. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The Court, therefore, does not recommend a COA issue.

### iii. Conclusion

While this case, like many habeas cases, must be decided on procedural grounds, the Court agrees with Stokes that the version of events outlined in the trial court's contempt order are an inaccurate depiction of the events that occurred on December 17, 2019 as depicted in the videos submitted for the Court's review. Despite the Court's disagreement with the state trial judge's characterizations of Stokes' behavior, strict procedural requirements bind federal courts on habeas review. Stokes presents no developed argument for overcoming such procedural hurdles to allow merits review of her claim.

V. Recommendation

For the foregoing reasons, the Court **HEREBY RECOMMENDS** as follows:

(1) Stokes' Petition for writ of habeas corpus (DN 1; DN 8) be **DENIED**.

(2) A Certificate of Appealability be **DENIED** as to Stokes' Claims.

NOTICE

Therefore, under the provisions of 28 U.S.C. Sections 636(b)(1)(B) and (C) and Fed.R.Civ.P. 72(b), the Magistrate Judge files these findings and recommendations with the Court and a copy shall forthwith be electronically transmitted or mailed to all parties. Within fourteen (14) days after being served with a copy, any party may serve and file written objections to such findings and recommendations as provided by the Court. If a party has objections, such objections must be timely filed or further appeal is waived. Thomas v. Arn, 728 F.2d 813 (6th Cir.), aff'd U.S. 140 (1984).

Copies:        Counsel of Record